ATLANTIC TERRA COTTA COMPANY *vs.* CHESAPEAKE TERRA COTTA COMPANY.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

A contract of sale of personal property may be valid notwithstanding neither time of delivery nor time of payment is fixed, for the law will imply that delivery is to be made within a reasonable time and that payment is to be made upon delivery of the goods.

A proposal to furnish architectural terra cotta, which was signed as accepted by a buyer, contained a condition that acceptance of it was subject to a form of contract satisfactory to the seller. *Held* that the execution of a formal written contract was a condition precedent to the formation of a contract, and in default of such formal contract the seller could not recover from the buyer damages for failure to accept the terra cotta.

Atlantic Terra Cotta Co. *v.* Chesapeake Terra Cotta Co.

While it is possible for parties to enter into a binding informal agreement to execute a formal written contract, yet the acceptance of a proposal containing such a condition cannot reasonably be construed to express such an agreement, but is only a stage in the negotiations for a contract.

Where a complaint alleges a contract by the acceptance in writing of a written proposal for a contract, and sets forth both the proposal and the acceptance, it is a question of law for the court, determinable on demurrer, whether any such contract exists.

Argued January 19th—decided April 5th, 1921.

ACTION to recover damages for the wrongful repudiation of an alleged contract to accept and use terra cotta for a certain building shortly to be erected, brought to the Superior Court in Fairfield County where a demurrer to the amended complaint was sustained, *Maltbie, J.,* and, no further pleading having been filed by the plaintiff, judgment was rendered for the defendant, from which the plaintiff appealed. *No error.*

The amended complaint was as follows:—

"1. On March 29, 1920, the plaintiff and the defendant entered into a contract pursuant to the terms of which the plaintiff agreed to furnish, and the defendant agreed to accept, the architectural terra cotta, unglazed finish, for a certain building known as the Chastleton Apartments, to be erected in Washington, D. C., for the sum of $17,000. A memorandum of said agreement was made in writing and signed by both parties thereto, and a copy of said memorandum has heretofore been filed in court and marked 'Plaintiff's Exhibit A.'

"2. Shortly after entering into said agreement, said defendant renounced and repudiated said agreement; notified said plaintiff that it would not be bound by the terms thereof, and that it would prevent said plaintiff from carrying out or performing said agreement or any part thereof.

"3. Said renunciation and repudiation of said agreement by said defendant was against the protest of said plaintiff.

"4. Said plaintiff has at all times been ready, able and willing to carry out and perform its part of said agreement."

The Exhibit A referred to in the complaint was as follows:—

## "EXHIBIT A

"ATLANTIC TERRA COTTA COMPANY
. 1170 Broadway, New York.
　　Tel. 5740 Madison Square.

　　　　　　　　"March 22, 1920.

"Chesapeake Terra Cotta Co.,　　　In replying please
　　　　Baltimore, Md.　　　　　　　refer to
　　　　　　　　　　　　　　　PROPOSAL NO. 1577.

　　CONDITIONS.

"1. This proposal is good for thirty days from date, and acceptance thereof is subject to a form of contract satisfactory to us."

Then followed eleven other conditions not relevant to the questions raised in this case.

Exhibit A continued as follows:—

"Dear Sir: We propose, subject to accompanying conditions, to furnish the Architectural Terra Cotta unglazed finish for building Chastleton Apartments to be erected for　　　　　　　　　　at 16th St., Washington, D. C., as per drawings by P. M. Julian, Architect, for the sum of Seventeen Thousand dollars ($17,000.00), the material to be delivered f o b plant with freight allowed to Washington at present rate of 18c per cwt.

"Price is for all terra cotta on 16th Street elevation and the north elevation of addition to Chastleton

Apartments with the exception of the three lower stories of the central bay and the two four story bays with parapet at either side of the central bay on 16th Street elevation, all as indicated by yellow pencil on architect's elevations Nos. 7 and 8.

"This estimate includes those items marked B, C, G, H, J, K, L, M, N, O and P, on the same elevation.

3/29/20 Accepted.

> "The Chesapeake Terra Cotta Co.
> Yours truly,
> per Francis Parsons.

> "Atlantic Terra Cotta Co.
> by Franks G. Evatt,
> General Sales Manager."

To this complaint the defendant demurred as follows:—

"The defendant demurs to the complaint as amended because it is insufficient in law in the following particulars:

"1. Plaintiff's Exhibit A discloses, by condition one thereof, that the alleged acceptance of plaintiff's proposal was "subject to form of contract satisfactory to" plaintiff; there is no averment that such a form of contract was ever concluded between the parties, and the plaintiff was accordingly never bound by defendant's alleged acceptance of said proposal, wherefore the alleged contract is illusory and void, and fails for want of mutuality.

"2. No consideration is averred for the alleged agreement of the defendant to accept said terra cotta, save only said illusory, conditional and void promise of the plaintiff to be bound by the terms of its said proposal, wherefore the alleged contract fails for want of consideration."

The case comes to this court on the claim that the demurrer to the amended complaint was improperly sustained.

*Raymond E. Hackett,* for the appellant (plaintiff).

*Norris E. Pierson,* with whom, on the brief, was *John C. Durey,* for the appellee (defendant).

CURTIS, J.   If the first condition of the plaintiff's proposal in Exhibit A, reading:   "1. This proposal is good for thirty days from date, and acceptance thereof is subject to a form of contract satisfactory to us"—had been omitted from the written offer made by the plaintiff, the written acceptance of the defendant could have been held to constitute a valid contract, upon the ground that although neither the offer nor the acceptance contained any express intent as to time of delivery or payment, yet in such case the absence of the ordinary stipulations as to time of delivery and time of payment would be supplied by implication of law.   Where no time for delivery is fixed by such a contract, the law implies delivery within a reasonable time.   Where no time of payment is fixed by such a contract, the law implies that the time of payment is upon the delivery of the goods. *Bollenbacher* v. *Reid,* 155 Mich. 277, 118 N. W. 933; 1 Williston on Contracts, § 38; 1 Page on Contracts (2d Ed.) § 92.

But in the offer, including condition one, as accepted, there is in effect an express intent as to such further details in the agreement as the parties may desire.   This will appear in the course of the opinion.

The essential question before us is whether the complaint, including Exhibit A, alleges a completed contract or, on its face, shows that it was a condition

precedent to the formation of a contract between the parties, that their agreement should be embodied in a formal written contract.

The defendant claims: (1) That it is a question of law to be determined by the court on demurrer, whether or not this complaint alleges a contract between the parties. (2) That condition one of the offer is, in effect, a statement that it is a condition precedent to the formation of any contract between the parties in reference to the offer contained in Exhibit A, that a formal written contract should be executed, and consequently that the mere writing— "3/29/20. Accepted. The Chesapeake Terra Cotta Co. Yours truly, per Francis Parsons"—upon the offer did not create a contract.

The plaintiff makes several claims: (1) That it is a question of fact, to be determined in the light of all the attendant and surrounding circumstances, whether or not the parties intended to make the execution of a formal written contract a condition precedent to the creation of a contract. (2) That condition one is, in effect, merely the expression of a desire on the part of the plaintiff to have a contract, which was completed by a written offer and written acceptance in so far as terms are concerned, evidenced by a form of contract acceptable to the plaintiff, and that the written acceptance of the written offer closed the transaction in so far as terms are concerned, and created a contract, whether or not the plaintiff's desire for a written contract was gratified. (3) That the offer and acceptance embodied in Exhibit A created a valid agreement to make a written agreement in the terms of Exhibit A.

The first question that presents itself is whether or not the complaint alleges a contract between the parties. We construe the complaint as in effect

alleging: (1) That the plaintiff submitted the written proposal contained in Exhibit A to the defendant. (2) That the defendant accepted the proposal in writing as appears on Exhibit A. (3) That thereby a contract was completed between the parties. In this view of the complaint it is a question of law determinable on demurrer whether the complaint alleges a contract.

When a formal written proposal for a contract is made, which is accepted in writing and the existence of a contract depends upon these documents, it is a question for the court to determine what obligation, if any, is attached by mere force of law to the terms of the written proposal and acceptance. *Mercer Elec. Mfg. Co.* v. *Connecticut Elec. Mfg. Co.*, 87 Conn. 691, 89 Atl. 909; *Hotchkiss* v. *National City Bank*, 200 Fed. Rep. 287; *Ziulkoski* v. *Barker*, 94 Conn. 491, 109 Atl. 185.

We will consider the claim of the defendant that the written proposal and acceptance did not create a contract. The defendant claims that its acceptance of the plaintiff's proposal as disclosed in Exhibit A did not create a contract, but merely marked a stage in the negotiations, which, because of condition one of the proposal, would not ripen into a completed contract until a formal written agreement was drawn and executed by the parties, and therefore that either party could withdraw from the transaction at any time before the execution of the written agreement.

Condition one of the proposal reads: "1. This proposal is good for thirty days from date, and acceptance thereof is subject to a form of contract satisfactory to us."

A proposal, or the acceptance of a proposal, with the condition that it is "subject to a form of contract satisfactory to us," involved the use of terms that have had extensive interpretation in the courts,

In *Chinnock* v. *Marchioness of Ely*, 4 D. J. & S. 638, 646, Lord Westbury says: "But if to a proposal or offer an assent be given subject to a provision as to a contract, then the stipulation as to the contract is a term of the assent, and there is no agreement independent of that stipulation."

In the leading case of *Winn* v. *Bull*, L. R. 7 Ch. Div. 29, 6 English Ruling Cases, 171, Jessel, M. R., says: "It comes, therefore, to this, that where you have a proposal or agreement made in writing expressed to be subject to a formal contract being prepared, it means what it says; it is subject to and is dependent upon a formal contract being prepared. When it is not expressly stated to be subject to a formal contract it becomes a question of construction, whether the parties intended that the terms agreed on should merely be put into form, or whether they should be subject to a new agreement the terms of which are not expressed in detail."

In *Lloyd* v. *Nowell*, 13 The Reports (Ch. Div.) 712 (1895), plaintiff's written offer to sell a lease contained this clause: "Subject to preparation by my solicitor, and completion of a formal contract"; upon the written offer the defendant wrote "Accepted" and signed it. No formal contract was executed. Plaintiff brought specific performance. The condition was construed as a condition precedent to the completion of a contract, which condition the plaintiff could not waive.

In *Von Hatzfeldt-Wildenburg* v. *Alexander*, L. R. (1912) 1 Ch. Div. 284, Parker, J., says: "The fact that the reference to a more formal document is in words which according to their natural construction import a condition is generally if not invariably conclusive against the reference being treated as . . . a mere desire." The court also said, in substance:

If acceptance is of an offer "conditional on the execution of a formal contract," it is not a condition that the offerer can waive.

One reason, no doubt, for this rule as to waiver, is that the existence of such a condition, with its implied *locus pœnitentiœ*, may have influenced the conduct of the acceptor.

In *Coope* v. *Ridout*, L. R. (1920) 2 Ch. Div. 411, a purchaser made an offer for a freehold at a specific sum "subject to title and contract," negotiations proceeded and a draft of a contract was prepared satisfactory to both parties, when the vendor withdrew from the transaction. It was held "that even assuming that all the terms of the agreement had been settled one by one and embodied in the draft, the condition contained in the offer required that a written contract made inter partes should be formally entered into and in the absence of such a document there was no enforceable contract."

In *Rossdale* v. *Denny*, L. R. (1921) 1 Ch. Div. 57, Russell, J., says, in substance, that in every English case but one, where the offer or acceptance was stated to be subject to a formal written contract, the courts have held that the execution of a formal written contract was a condition precedent to the creation of a contract, and that the excepted case of *North* v. *Percival*, L. R. (1898) 2 Ch. Div. 130, 132, had been disapproved in numerous cases, and was without authority.

In *Rossdale* v. *Denny*, *supra*, the court said (p. 59): "The question [here] is one entirely depending upon the true construction of the documents [letters in that case]." Further, the court said: "If upon a true construction of the documents the reference to a formal contract amounts to an expression of a desire on the part of one or other of the parties, or both, that the already complete contract should be reduced into a

more formal shape, then the fact that no such contract has been executed" does not negative the existence of a contract. "If, on the other hand, the true construction of the documents is this, that either the offer or acceptance was conditional only, then the non-execution of a formal contract" negatives the existence of any contract, on the ground that the parties really did not intend to be bound until a formal contract had in fact been executed.

In these two recent cases, the prior cases are considered with great care and the following statement of the law in *Winn* v. *Bull*, L. R. 7 Ch. Div. 29, 6 English Ruling Cases, 171, firmly established: "It comes, therefore, to this, that where you have a proposal or agreement made in writing expressed to be subject to a formal contract being prepared, it means what it says; it is subject to and is dependent upon a formal contract being prepared."

In the case at bar, the proposal in Exhibit A is, in effect, expressed to be subject to a formal contract being prepared, and it must be construed as meaning what it says, so that in the absence of the execution of a formal written agreement no contract was completed. Where there is no written proposal or acceptance expressed to be subject to a formal contract, but where there was reference to a written contract in the negotiations, then, as we said in *Garber* v. *Goldstein*, 92 Conn. 226, 102 Atl. 605, it becomes a question of fact, whether the parties intended the agreement in a certain memorandum to constitute a contract or intended that there should be no contract until the execution of a formal written contract, and it depends " 'upon the intention of the parties as gathered from the language used when interpreted in the light of the attendant and surrounding circumstances.' " See also *Mercer Elec. Mfg. Co.* v. *Connecticut Elec. Mfg. Co.*, 87 Conn. 691, 89 Atl. 909;

*Shaw* v. *Pope*, 80 Conn. 206, 67 Atl. 495; *Johnson* v. *Phœnix Mut. Life Ins. Co.*, 46 Conn. 92.

In *Mississippi & D. Steamboat Co.* v. *Swift*, 86 Me. 248, 29 Atl. 1063, there were numerous letters between the parties, but no offer or acceptance was expressed to be subject to a formal contract being prepared, but a written contract was spoken of. The court, under such circumstances, stated the law as follows: "If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed. In determining which view is entertained in any particular case, several circumstances may be helpful, as: whether the contract is of that class which are usually found to be in writing; whether it is of such nature as to need a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether the negotiations . . . indicate that a written draft is contemplated as the final conclusion of the negotiations. If a written draft is proposed, suggested or referred to, . . . it is some evidence that the parties intended it to be the final closing of the contract."

The cases of *Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209, 39 N. E. 75, and *United States* v. *P. J. Carlin Const. Co.*, 224 Fed. Rep. 859, fall within the class of cases where neither the offer nor the acceptance was expressed to be subject to a formal written contract.

The plaintiff's proposal in the case at bar is expressly stated, in condition one, to be subject to a form of contract, and therefore it was a condition precedent to the formation of a contract between the parties that

a formal contract should be executed, and in such case under the law as stated above there is no occasion to resort to evidence of the attendant and surrounding circumstances to discover the intent of the parties as to whether or not a formal written contract was a condition precedent to the completion of a contract, for the proposal and acceptance conclusively established such intent.

The plaintiff's first claim, therefore, is not tenable.

The plaintiff's second claim is that condition one should not be construed as making the execution of a formal written contract a condition precedent to the creation of a contract, but construed merely as an expression of a desire on the plaintiff's part that a contract created by the acceptance found in Exhibit A should be evidenced by a written agreement.

What we have already said as to the construction that the law has attached in a long line of decisions, to the expression in an offer or an acceptance of the term "subject to a contract," or "subject to a formal contract," sufficiently refutes this claim of the plaintiff.

The remaining claim of the plaintiff, implied from its reliance on *Pratt* v. *Hudson River R. Co.*, 21 N. Y. 305, is that the proposal and acceptance disclosed by Exhibit A constitute a valid agreement to make a written contract.

The law relied upon is summarized in 13 Corpus Juris, § 100, p. 290, under head of "negotiations looking to formal contract," as follows: There is not "a binding contract where, although its terms have been agreed on orally [informally], the parties have also agreed that it shall not be binding until evidenced by writing. On the other hand, an agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all re-

spects as ' valid and obligatory [where no statutory objection interposes] as the written contract would be if executed. If, therefore, it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are all definitely understood and agreed on, and that a part of the mutual understanding is that a written contract . . . shall be drawn and executed by the respective parties, this is an obligatory agreement, which dates from the making of the oral [informal] agreement and not from the date of the subsequent writing, and an action at law will lie for the breach of the . . . contract to execute the written agreement, and the same damages are recoverable as would have been recoverable for a refusal to perform the contract had it been executed in writing."

The following are citations which support this statement of the law: Williston on Contracts, Vol. 1, § 28, says: "It is everywhere agreed to be possible for parties to enter into a binding informal or oral agreement to execute a written contract." See also 3 Elliott on Contracts, § 2219; *Clark* v. *City of Bradford Gas & Power Corp.*, 11 Del. Ch. 178, 98 Atl. 368; *Ferguson Contracting Co.* v. *Helderberg Cement Co.*, 155 N. Y. App. Div. 494, 120 N. Y. Supp. 317; *Drummond* v. *Crane*, 159 Mass. 577, 35 N. E. 90.

We are satisfied that condition one of the plaintiff's proposal accepted by the defendant could not reasonably be construed to express an agreement on the part of the defendant to make and execute a written agreement containing the exact terms of Exhibit A as to furnishing terra cotta to the defendant by the plaintiff.

In the leading case on the subject, *Pratt* v. *Hudson River R. Co.*, 21 N. Y. 305, the proposal contained this

Atlantic Terra Cotta Co. *v.* Chesapeake Terra Cotta Co.

provision: "Contractors, whose bids may be accepted, will be required to enter into contract"; the acceptance read, in part: "we hereby bind ourselves to enter into written contracts."

This proposal and acceptance was held to constitute a contract to enter into a written contract upon the definite terms of the proposal as accepted. And the refusal of one party to execute a written contract was held in effect to be a breach of the contract evidenced by the proposal and acceptance.

It is apparent that the acceptance by the defendant of condition one of the plaintiff's proposal bears no resemblance to the offer and acceptance which created a contract to make a contract, in the case of *Pratt* v. *Hudson River R. Co.*, 21 N. Y. 305.

We find, therefore, that the written proposal of the plaintiff in condition one was expressed, in effect, to be subject to a formal written contract being prepared and executed, and that the mere acceptance of the proposal by the defendant did not create a contract. It was essential to the creation of a contract that a formal written agreement should be executed in accord with condition one. This formal written agreement was a condition precedent to the completion of a contract, and until such formal written agreement was executed the parties were still in the stage of negotiations for a contract, and either party could withdraw from the negotiations, or require further provisions to be included in the written agreement as to time of delivery or payment or other terms.

For the foregoing reasons we find no error in the ruling of the trial court.

There is no error.

In this opinion the other judges concurred.